IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ELIZABETH H. SPILLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:23-cv-00540 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Elizabeth Spillman brings claims against the United States arising out of a traffic stop on the Blue Ridge Parkway. Pending before the court is defendant United States' motion to dismiss or, in the alternative, motion for summary judgment (Dkt. No. 10), and Spillman's motion for discovery under Federal Rule of Civil Procedure 56(d) (Dkt. No. 36). For the reasons set forth below, the court will grant defendant's motion to dismiss Count III, deny defendant's motion to dismiss Counts I and II, deny without prejudice defendant's motion for summary judgment, and deny as moot plaintiff's motion for discovery under Rule 56(d).[1]

I. BACKGROUND[2]

On July 23, 2021, Elizabeth Spillman was leaving a music festival in Floyd County, Virginia, when she drove in the middle of the two-lane Blue Ridge Parkway for about fifteen

---

[1] At the hearing held on these motions on January 5, 2024, the court granted the motion to dismiss Count IV, the abuse-of-process claim. That count is no longer at issue, and the court expressly dismisses it in the attached order. The court also denied at the hearing Spillman's motion to strike several screenshots from the dashcam videos attached as exhibits to the government's reply in support of its motion to dismiss. (Minute Entry, Dkt. No. 35 (indicating denial of motion to strike at Dkt. No. 30).)

[2] This section is based upon Spillman's complaint and several dash cam, body cam, and surveillance videos. The parties agree that the court may properly consider these videos at the motion to dismiss stage as they are integral to the complaint. (*See* Pl.'s Opp'n 10, Dkt. No. 22 ("Spillman does not oppose the Court considering the video at this stage").)

seconds. (Compl. ¶¶ 15–16, Dkt. No. 1.) National Park Service Ranger James Lyon was patrolling and directing traffic at that exit when he observed Spillman's driving behavior and began following her. (*Id.* ¶ 15.) He initiated a traffic stop after observing Spillman veer towards the edge and middle of the road. (*Id.*) Lyon walked up to Spillman's driver's side door and noticed a beer bottle in the center console, which Spillman claimed was empty, though she then shook the bottle's contents out on the passenger's side of the car. (Def.'s Ex. C 0:05–0:13, Dkt. No. 11-3.) Spillman admitted that she had "a couple drinks" and rated her intoxication level as a four out of ten. (*Id.* at 0:16-0:23.) Lyon then asked Spillman to perform several field sobriety tests such as the recitation of the alphabet and walking in a straight line, and Spillman either did not fully comply with or performed poorly on these tests. (*Id.* at 0:55–1:16, 3:45–6:18.) Next, Lyon requested that Spillman blow into a breathalyzer, which she initially refused to do. (*Id.* at 7:50–8:20.) Lyon then asked Spillman to place her hands behind her back because she was being arrested for driving under the influence. (*Id.* at 8:30.) Spillman immediately became combative and jerked away from Lyon; a state trooper at the scene had to assist Lyon in handcuffing Spillman. (*Id.* at 8:32–8:53.) Spillman then said that she would perform the breathalyzer test, and she blew a blood alcohol concentration (BAC) of 0.11. (*Id.* at 9:30 – 10:31.)

    Lyon then drove Spillman to the Floyd County Sherriff's Office. (Compl. ¶ 28.) Upon arrival, Spillman got out of the vehicle voluntarily and Lyon asked her to start walking to the door. (*Id.* ¶ 29.) Lyon then grabbed her by her arm and jacket collar to effectively drag her across the parking lot while she continually pulled away from him and berated him. (*Id.* ¶ 30.) Spillman alleges that Lyon "tore her Levi jacket, bruised her arm and twisted her around which

caused her to lose her shoe, and at the same time stripping off her blouse from covering her." (*Id.* ¶ 32.) During this struggle, Spillman's shirt slipped down to expose her breasts. (*Id.* ¶ 34.)

Lyon and Spillman eventually reached the door to the Sheriff's office. (Def.'s Ex. D at 1:30, Dkt. No. 11-4.) Lyon tried to get the attention of the facility's staff and ask them to open the door, but he and Spillman had to wait outside the station for several minutes. (*Id.* at 1:30–1:55.) Spillman alleges that Ranger Lyon was grabbing her by the ear and hair at this point. (Compl. ¶¶ 34, 38.) A female 911 dispatcher eventually opened the door for them. (*Id.* ¶ 41.) Spillman's breasts were still exposed at this time. (*Id.*) Lyon then directed Spillman to enter the facility and walk to where the breathalyzer machine was located but Spillman continued to pull away; Lyon again grabbed her by the collar and arm and pulled her to the machine. (Def.'s Ex. D at 2:45–7:20.) Once they reached their destination and Spillman stopped being actively combative, Lyon asked the 911 operator to button Spillman's jacket to cover her breasts. (*Id.* at 2:50–7:20.) Lyon administered another breathalyzer test that again showed that Spillman's BAC was 0.11. (*Id.* at 34:00–35:52.) Lyon then escorted Spillman to appear before a magistrate via videoconference. (Compl. ¶ 77.) Lyon testified under oath that Spillman's car drove into the wrong lane and toward the shoulder of the road several times, leading him to pull her over on the suspicion that Spillman was driving under the influence. (*Id.*) Lyon then recounted his interactions with Spillman where she repeatedly pulled away from him and resisted his commands. (*Id.* ¶ 81–82.) Lyon stated that he was seeking charges of driving under the influence and obstruction against Spillman. (Def.'s Ex E at 17:57–18:00, Dkt. No. 11-5.)

The Floyd County Commonwealth's Attorney's Office ultimately chose not to prosecute the obstruction charge, and the Floyd County General District Court dismissed the DUI charge because it found that Lyon lacked reasonable suspicion to make the stop. (Compl. ¶¶ 6–7.) On

3

September 29, 2022, Spillman filed an injury claim with the National Park Service, which was then transferred to the Department of the Interior.  (*Id.* ¶ 4.)  The Department denied the claim on March 22, 2023, and Spillman filed this case on August 21, 2023.  (*Id.*)  The following claims remain in the case, and Spillman asserts all of them against the United States under the Federal Torts Claims Act: Count I—Assault, Count II—Battery, and Count III—False Arrest.

The United States has now moved to dismiss Spillman's claims for failure to state a claim or, in the alternative, to grant summary judgment in the United States' favor.  (Dkt. No. 10.)  Following the hearing, Spillman filed a Rule 56(d) motion requesting discovery to aid in her opposition to the government's motion for summary judgment.  (Dkt. No. 36.)  Counsel for the United States explained at the January 5, 2024 hearing that it moved in the alternative for summary judgment only in the event that the court concluded it could not consider the videos on a motion to dismiss.  Because plaintiff agrees the videos may be considered and the court has considered them, the court will deny the motion for summary judgment without prejudice and will deny plaintiff's Rule 56(d) motion as moot.

## II.  DISCUSSION

### A.  Legal Standards

#### 1.  Motion-to-dismiss standard

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678.  In considering the motion, the court must construe the facts and reasonable inferences "in the light most

favorable to the nonmoving party." *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302.

### 2. Federal Tort Claims Act (FTCA)

The complaint states that Spillman is pursuing "this legal action against the United States Department of the Interior . . . pursuant to the Federal Tort Claims Act." (Compl. ¶ 1.) "As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity." *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The FTCA provides a waiver of sovereign immunity for damages suits related to certain actions by federal employees that occur within the scope of their employment. *See* 28 U.S.C. §§ 1346(b)(1), 2674.

## B. Spillman's Claims Against the United States

### 1. Count III—False arrest

#### a. Collateral estoppel

Before turning to the United States' arguments in support of dismissal of Count III, the court first addresses Spillman's contention that a prior court ruling in her criminal case already established that there was no "reasonable suspicion" for the initial stop and bars reconsideration of that issue here. Specifically, Spillman argues that the issue of whether Lyon had reasonable suspicion to pull her over for a possible DUI should not be re-litigated since the Floyd County general district court already found that there was a lack of reasonable suspicion for the stop. (Pl.'s Opp'n 13–14.)

Under the Full Faith and Credit Clause, "the federal courts generally have . . . consistently accorded preclusive effect to issues decided by state courts." *Allen v. McCurry*, 449

5

U.S. 90, 95 (1980). Further, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Id.* at 96. The parties agree that Virginia preclusion law would apply here. (*See* U.S.'s Reply 3, Dkt. No. 27.); *see also Jeffers v. Lyons*, 605 F. App'x 198, 199 (4th Cir. 2015) ("[W]e look to Virginia law to determine the preclusive effect of the Virginia court's judgment."). Although general district courts in Virginia are "courts not of record," their final judgments are nonetheless entitled to preclusive effect. *Air Power, Inc. v. United States,* 741 F.2d 53, 59 (4th Cir. 1984).

It is the settled rule in Virginia that "a judgment of conviction or acquittal in a criminal prosecution does not establish in a subsequent civil action the truth of the facts on which it was rendered" and "such judgment of conviction or acquittal is not admissible in evidence in the civil case." *Jeffers*, 605 F. App'x at 199 (citations omitted); *see also Kane v. Hargis*, 987 F.2d 1005, 1008 (4th Cir. 1993) (recognizing this rule); *United States v. Turner*, 933 F.2d 240, 243 n.2 (4th Cir. 1991) (same). There are various reasons that have been articulated for this rule, including: "(1) [t]he parties are different in a criminal proceeding from those in a civil action; (2) the objects of the two proceedings are different; (3) the results and procedures of the two trials are different; and (4) there is a lack of mutuality." *Selected Risks Ins. Co. v. Dean*, 355 S.E.2d 579, 581 (Va. 1987) (citing *Aetna v. Czoka*, 105 S.E.2d 869, 872 (1958)). Spillman's argument fails for many of these reasons, as discussed below.

First, Virginia's "doctrine of collateral estoppel precludes *the same parties* to a prior proceeding from litigating in a subsequent proceeding any issue of fact that was actually litigated and essential to a final judgment in the first proceeding." *Glasco v. Ballard*, 452 S.E.2d 854, 855 (Va. 1995) (emphasis added). The Commonwealth of Virginia, not the United States, was a

6

party to Spillman's state criminal case. Second, the objects of the two proceedings are different. The initial case involved an alleged violation of a criminal law, and the present case involves a civil dispute between Spillman and the U.S. Government. Third, the results and procedures of the two trials are different. In the criminal case, the Commonwealth of Virginia had the burden of proving Spillman guilty beyond a reasonable doubt, and she potentially faced a prison sentence. In the present civil case, Spillman has the burden of proving her position against the U.S. government by the preponderance of the evidence and is primarily seeking compensatory relief. For these reasons, collateral estoppel does not preclude the United States from arguing that Lyon had reasonable suspicion to pull Spillman over for a possible DUI.

    b. *False arrest standard*

While Virginia law does not recognize a separate cause of action for false arrest, "the common law tort of false imprisonment is sometimes interchangeably referred to as false arrest." *Jackson v. Brickey*, 771 F. Supp. 2d 593, 604 (W.D. Va. 2011). Under Virginia law, the tort of false imprisonment "is the restraint of one's liberty without any sufficient legal excuse." *Lewis v. Kei*, 708 S.E.2d 884, 890 (Va. 2011). If a plaintiff's arrest was lawful, she cannot prevail on a claim of false imprisonment. *DeChene v. Smallwood*, 311 S.E.2d 749, 752 (Va. 1984). Spillman contends that Lyon did not have sufficient legal excuse to restrain her liberty when he pulled her over and when he arrested her for DUI, while the United States asserts that the traffic stop and subsequent arrest were both lawful.

    c. *Reasonable suspicion for the traffic stop*

The court finds that Lyon lawfully initiated the traffic stop because he had reasonable suspicion that Spillman was driving under the influence. To lawfully initiate a traffic stop, a law enforcement officer only needs *reasonable suspicion* of a crime or traffic violation. *Navarette v.*

*California*, 572 U.S. 393, 396 (2014). The reasonable suspicion standard requires "obviously less" than what is required for probable cause. *Id.* at 397. The officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The officer must have "reasonable and articulable suspicion that the person seized is engaged in criminal activity." *Reid v. Georgia*, 448 U.S. 438, 440 (1980).

The reasonable suspicion standard can be met "when officers observe a traffic violation . . . ." *United States v. Johnson*, 734 F.3d 270, 275 (4th Cir. 2013). In *Navarette*, for example, the Court found that weaving back and forth and crossing over the center line are "sound indicia of drunk driving." 572 U.S. at 402; *see also United States v. Cunningham*, 213 F. App'x 214, 215 (4th Cir. 2007) (per curiam) (finding reasonable suspicion existed for a traffic violation when the officer observed the defendant "cross the 'rumble strips' on two occasions and enter the emergency lane"); *United States v. Williams*, 945 F. Supp. 2d 665, 674–75 (E.D. Va. 2013) (collecting cases finding that weaving provided reasonable suspicion for DUI). Indeed, the Fourth Circuit has found that a vehicle repeatedly veering in its lane and then jerking back in the other direction can actually constitute *probable cause* for a traffic stop. *United States v. Banks*, 162 F.3d 1156, 1998 WL 558757, at *1 (4th Cir. 1998) (unpublished table opinion).

Importantly, moreover, the dashcam videos reflect that Spillman at least once weaved across the double-yellow line into the opposite lane, at least once was on the yellow-double lines but did not cross fully into the opposite lane, and twice drove into the grass on the shoulder, all in the span of less than a minute. (*See* Def.'s Ex B 0:12–0:58.) These actions are akin to those that were deemed "sound indicia of drunk driving" under *Navarette*. Lyon therefore had

8

reasonable suspicion that Spillman was driving under the influence when he initiated the traffic stop.[3]

### d. *Probable cause for the arrest*[4]

The court finds that the complaint and videos also show that Lyon had probable cause to arrest Spillman for DUI. Probable cause "exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, [] are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." *Taylor v. Commonwealth*, 284 S.E.2d 833, 836 (Va. 1981). Probable cause "is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (internal quotation omitted). In making a probable cause determination, the court analyzes "what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control." *Taylor*, 284 S.E.2d at 836 (citation omitted).

Under Virginia law, it is unlawful to drive a car with a blood alcohol content (BAC) of 0.08 or higher or while otherwise under the influence of alcohol, and a law enforcement officer with probable cause may make a warrantless arrest of any person suspected of doing so within three hours of the alleged offense. Va. Code Ann. §§ 18.2-266, 19.2-81(D). There are multiple ways to develop probable cause for DUI in Virginia. One is the use of a preliminary breathalyzer test to measure a person's BAC. Va. Code Ann. § 18.2-267(D). A person suspected of driving while intoxicated is entitled to a preliminary voluntary breathalyzer test as

---

[3] Lyon's reasonable suspicion was also supported by his knowledge that she was leaving an music festival where people often drank alcohol. Although Spillman insists that she was merely dropping off someone at the festival and had not attended, she does not dispute that characterization of the event nor does she dispute that Lyon knew that people often consumed alcohol. Nonetheless, the court does not consider that fact in ruling on the motion to dismiss.

[4] Spillman also argues that because the initial stop was unlawful, it follows that the arrest was unlawful, and discusses the issue in terms of proximate cause. (Pl.'s Opp'n at 17–20.) Having found that the initial stop was supported by reasonable suspicion, the court need not reach this issue.

an "independent means to determine and resolve questions concerning probable cause." *Jones v. Town of Marion,* 508 S.E.2d 921, 923 (Va. Ct. App. 1999). Additionally, in *Jones v. Commonwealth*, 688 S.E.2d 269, 273 (Va. 2010), the Supreme Court of Virginia found that the defendant's bloodshot eyes, slurred speech, and the scent of alcohol on his breath, all established probable cause for arrest. Virginia courts have also found that "[a] defendant's admission that he consumed several alcoholic beverages, together with the testimony of the arresting officer regarding the defendant's appearance and lack of coordination, is sufficient to support a *conviction* for driving under the influence of alcohol." *Lemond v. Commonwealth*, 454 S.E.2d 31, 36 (Va. 1995) (emphasis added).

The court finds that the totality of the circumstances here gave Lyon probable cause to arrest Spillman for a suspected DUI. She had been driving erratically, *admitted* to drinking alcohol, performed poorly on the field sobriety tests, and acted belligerently during the traffic stop. Lyon attempted to arrest her before she blew the breathalyzer test, so the court does not consider the results of that test in determining whether he had probable cause. But her BAC of 0.11 certainly "resolved [the] question of probable cause" and confirmed what the totality of the circumstances had already been pointing to: Spillman was probably driving under the influence. *Jones*, 508 S.E.2d at 923. It is clear from the complaint and the video footage that Lyon had probable cause to arrest Spillman for DUI; thus, the arrest was lawful. The court will therefore grant the government's motion to dismiss Count III.

    e. *Good faith defense*

Even if Lyon did not have reasonable suspicion for the stop and/or probable cause for the arrest, Virginia law affords a good-faith defense to officers "who subjectively believed[] in good faith, that [their] conduct was lawful and whose subjective beliefs were objectively reasonable."

*Wingate v. Fulford*, 987 F.3d 299, 312 (4th Cir. 2021). The Fourth Circuit has noted that the Virginia good faith defense "is congruent with the federal qualified immunity defense." *Id.*

Spillman suggests that Lyon acted in bad faith by purportedly fabricating the reasons for the traffic stop and arrest and by "putting her in danger" during the field sobriety tests. (Pl.'s Opp'n 28–29.) However, there is no indication that Lyon himself did not subjectively believe that he was acting in good faith when he stopped and arrested Spillman. Furthermore and as discussed above, Lyon's decisions to pull Spillman over and subsequently arrest her were objectively reasonable given the totality of the circumstances. Construing the government's exercise of the good-faith defense as an assertion of qualified immunity, Lyon would be shielded from liability so long as his conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Given the court's findings that Lyon had reasonable suspicion to pull Spillman over and probable cause to arrest her, his conduct in doing so did not violate Spillman's statutory or constitutional rights. Moreover, even if Lyon was somehow mistaken in his decisions to pull Spillman over and arrest her, a belief that there was reasonable suspicion or probable cause can be reasonable "even if it was later discovered that [he] was mistaken." *Deavers v. Spotsylvania Cnty. Sheriff's Dep't*, No. 3:14CV365-HEH, 2014 WL 2993445, at *4 (E.D. Va. July 2, 2014) (citing *DeChene*, 311 S.E.2d at 751). Therefore, even if Lyon did not have reasonable suspicion to pull Spillman over for a suspected DUI or have probable cause to arrest her, Lyon would nevertheless be entitled to the Virginia "good faith" defense and would be shielded from liability for Spillman's false arrest claims.

For all of the foregoing reasons, the court will dismiss Count III.

### 2. Counts I and II: Assault and battery

The tort of assault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery. *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003). The tort of battery is an unwanted touching that is neither consented to, excused, nor justified. *Id.*

The court finds that Spillman has plausibly alleged each of the above elements of assault and battery and has therefore stated claims for which relief can be granted. As to Spillman's assault claim, she has alleged that Lyon intentionally placed her in fear of imminent bodily harm by conducting the field sobriety tests "in the middle of a busy parkway" and by walking her in and around the sheriff's office with her breasts exposed. (Compl. ¶¶ 18, 90.) Spillman claims Lyon committed battery when he handcuffed her, touched her blouse, "dragged" her across the sheriff's office parking lot, and "grabbed" and "bruised" her upper arm. (*Id.* ¶¶ 23, 27, 32, 34.) Spillman contends that these instances of touching were unwanted and were "neither consented to, excused, nor justified." (*Id.* ¶ 92.) Moreover, while the dashcam video shows Spillman resisting arrest several times during the *traffic stop*, Lyon's body-worn camera footage does not clearly depict Spillman's actions when she first exited the patrol car in the sheriff's office parking lot. Thus, that footage does not directly contradict the allegations in the complaint. Similarly, the complaint alleges that that Lyon grabbed her hair and/or by the ear while leading her into the sheriff's office, and the video footage does not clearly show where exactly Lyon was touching Spillman the entirety of the time they walked through the sheriff's office parking lot. Thus, with regard to at least some of the allegations, the videos do not so fully discredit plaintiff's allegations such that those allegations should not be credited on a motion to dismiss.

*Cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) (explaining that in ruling on a summary judgment motion, the court may credit video evidence of events if the plaintiff's "version of events is so utterly discredited by the record that no reasonable jury could have believed him"); *see also Witt v. W. Va. State Police*, 633 F.3d 272, 277 (4th Cir. 2011) (finding that defendants were not entitled to summary judgment because dashboard video did not "blatantly contradict" plaintiff's version of events). It cannot be said that the videos here utterly discredit or blatantly contradict every one of Spillman's allegations supporting her assault and battery claims, so the court must treat those uncontradicted allegations as true. Doing so, it is clear that she has plausibly alleged both claims.

### III. CONCLUSION

For the reasons stated above, the court will grant the United States' motion to dismiss Count III and will deny the United States' motion to dismiss Counts I and II. The court will also deny without prejudice the United States' motion for summary judgment and (because it is not ruling on summary judgment), the court will deny as moot Spillman's motion for discovery under Rule 56(d). An appropriate order will follow.

Entered: July 8, 2024.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge